Sheriff Charlie Garrison Baxter County 904 Highway 62 S.W. Mountain Home, Arkansas 72653
Dear Sheriff Garrison:
This is in response to your request, pursuant to A.C.A. §25-19-105(c)(3)(B) (Supp. 1995), for an opinion on whether certain records in the personnel file of former deputy sheriff Greg Rayl should be released to the public under the provisions of the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. §§ 25-19-101 to -105 (1987 and Supp. 1995).[1] Three separate media requests have been made for the records under the FOIA. You have enclosed a number of records with your request. The facts surrounding Mr. Rayl's employment are set out in your request letter and are restated as follows:
 Mr. Greg Rayl was terminated from the Baxter County Sheriff's Dept. on January 10, 1997. Baxter County Policy states that an employee has three (3) days to file a grievance. On January 13, 1997 the Baxter Bulletin and KTLO Radio requested copies from Mr. Rayl's files as to why Mr. Rayl was terminated, under the F.O.I. Act. (Copies of the files were not made available to them at this time). Mr. Rayl filed a grievance with Judge Bodenhamer, Baxter County Judge, on January 17, 1997. Judge Bodenhamer set the hearing date, with the Baxter County Quorum Court for February 25, 1997.
 On February 25, 1997, the night of the hearing, Mr. Rayl along with his attorney, Ed Chandler, Deputy Prosecuting Attorney Ron Kincade, County Judge Joe Bodenhamer, along with myself [Sheriff Garrison], met and agreed on reinstating Mr. Rayl, retroactive back to January 10, 1997, with pay. Then, Mr. Rayl would resign effective February 25, 1997.
 On February 26, 1997, the Baxter Bulletin and KTLO Radio requested copies of Mr. Rayl's files as to why Mr. Rayl was terminated/reinstated.
As an initial matter, it is necessary to clarify exactly what documents have been requested under the FOIA. The records you have enclosed with your request indicate that on January 13, 1997, "The Daily News" and "KTLO Radio" each requested a copy of "the written statement given to Deputy Greg Rayl stating the reasons for his dismissal." You have indicated that the requested record was not provided at that time, and I assume that decision was made because Mr. Rayl still had administrative remedies to pursue with regard to his termination. See A.C.A. §25-19-105(c)(1). On February 26, 1997 (the day after the scheduled grievance hearing and ultimate resignation) the Baxter Bulletin requested access to Mr. Rayl's "personnel file," and noted specifically that it wished to review "all employee evaluations, performance records and disciplinary actions, including reasons for his suspension and dismissal, as well as any records pertaining to his reinstatement and resignation."
As noted above, you have enclosed a number of records with your request, which I assume you deem responsive to the above FOIA requests. The disclosability of each of the records you have enclosed is discussed sequentially, below. As a general matter, however, it is my opinion that the "written statement" notifying Mr. Rayl of his termination, which is titled a "Notice of Employment Termination," is not subject to inspection and copying under the FOIA because it is a "employee evaluation or job performance record" and is not subject to disclosure in the absence of a "final administrative resolution" resulting in the termination of the employee. Because the decision to terminate Mr. Rayl was reversed, there was no final termination, and a resignation, under the facts you describe, is not sufficient to trigger the release of evaluation and job performance records. With regard to the broader later request of the Baxter Bulletin, some of the records you have enclosed are subject to inspection and copying under the Act, with some required deletions. The documents will be discussed, in turn, below.
The first document you have enclosed is entitled "Release," and encompasses the agreement between you, individually and officially, and Mr. Rayl, to mutually release each other from any claims and causes of action you might have against the other. This document is in my opinion neither an "employee evaluation or job performance record" nor a "personnel record" for purposes of the act, and is subject to no other exception from disclosure, assuming it is not under court seal.[2] It therefore must be made available for inspection and copying.
The second document enclosed with your request is merely a confirmation of Mr. Rayl's employment with the county, and details the capacity in which he served. This is in all likelihood a "personnel record" for purposes of the FOIA, but because its release would not constitute a "clearly unwarranted invasion of personal privacy" for purposes of A.C.A. § 25-19-105(b)(10), it is subject to inspection and copying.
The third document you have enclosed with your request is Mr. Rayl's letter of resignation. I have previously opined that such letters of resignation are generally "personnel records" for purposes of the FOIA. The question then becomes whether the record's release would constitute a "clearly unwarranted invasion of personal privacy" under A.C.A. §25-19-105(b)(10). This office has previously opined that a statement detailing the employee's intent to cease employment on a certain date does not implicate the privacy concerns reflected in § 25-19-105(b)(10).See Ops. Att'y Gen. 95-169; 95-162; and 89-077. If the resignation letter includes more detailed information of a personal nature, however, it may be exempt from disclosure. See, e.g., Op. Att'y Gen. 96-088. Mr. Rayl's letter of resignation is of the former type, and is thus subject to public inspection and copying.
The fourth document you have enclosed with your request is a letter from Mr. Rayl to all Quorum Court members, which embodies his request for a grievance hearing with regard to his termination. The letter includes Mr. Rayl's detailed rebuttal of the reasons advanced for his termination, and can in my opinion be properly characterized as an "employee evaluation or job performance record" for purposes of the FOIA. Although I have previously opined that documents or reports which are routinely or spontaneously created by employees in the course of their duties will not be exempt from disclosure under the FOIA as "employee evaluation or job performance records," records created by an employee at the instigation of a supervisor for the purpose of evaluating the employee's performance with regard to a specific incident or incidents can properly be characterized as "job performance records."See Op. Att'y Gen. 96-033.
"Employee evaluation or job performance records," as distinguished from "personnel records," may only be released upon "final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in their disclosure." A.C.A. § 25-19-105(c)(1) (Supp. 1995). Suspension or termination is a prerequisite to the release of employee evaluation or job performance records. It has been stated that: "[t]he records are exempt [from disclosure] . . . if a decision to suspend or terminate [the employee] has been overturned." Watkins, The Arkansas Freedom ofInformation Act (mm Press, 2d Ed. 1994) at 134, citing Op. Att'y Gen.91-180 (city council's decision to suspend police chief, which was vetoed by the mayor, and not overridden, was not a final suspension which would lead to release of the chief's job performance records). Under the facts you have outlined, you (the sheriff), the county judge, and Mr. Rayl, with the advice of the attorneys for both parties, agreed to reverse the termination decision and to reinstate Mr. Rayl with back pay to the date of the initial termination. The initial decision to terminate Mr. Rayl was thus reversed and he was not terminated. In my opinion, therefore, the initial prong for the release of "employee evaluation or job performance" records has not been met.
It might be argued, however, that Mr. Rayl was in fact finally "terminated," or at least constructively "terminated," in light of his agreement to resign rather than face the possibility of his termination being upheld by the quorum court. I have previously concluded that a resignation is not a "termination" for purposes of A.C.A. §25-19-105(c)(1). See, e.g., Ops. Att'y Gen. 92-266; 90-295 and 88-094. I have never addressed the question, however, of whether a particular "resignation" is in fact a de facto "termination" so as to trigger the opening of job performance records under A.C.A. § 25-19-105(c)(1). It is my opinion that where, as here, the employee in question still has administrative appeals to pursue, and there exists a possibility that his suspension or termination will be reversed in his favor, a resignation at that point, made with the advice of counsel, is voluntary on his part, and does not result in a constructive "termination" for purposes of triggering the release of his evaluation or job performance records. Cf.generally, Deoma v. City of Shaker Heights, 68 Ohio App.3d 72,587 N.E. 2d 425 (1990) (plaintiff police officer, who resigned on the advice of counsel immediately prior to his disciplinary hearing, was not "constructively discharged," but rather resigned as a tactical move to protect his own interests); and Bulloch v. City of Pascagoula,574 So.2d 637 (Fla. 1990) (police officer who resigned on the advice of counsel after learning that he was the subject of an investigation was not forced to resign or constructively discharged).[3]
It is therefore my opinion that the grievance letter, which contains rebuttals to allegations made concerning Mr. Rayl's job performance, is not subject to inspection and copying by the public. Mr. Rayl was not finally "terminated" for purposes of A.C.A. § 25-19-105(c)(1).
Similarly, in my opinion, the fifth document you have enclosed, the "Notice of Employment Termination" is not subject to inspection and copying. Such notices are "employee evaluation or job performance records" for purposes of the FOIA. See Ops. Att'y Gen. 96-258; 95-109; 92-247; 92-231; and 92-191. Absent a final "termination," such records are not subject to inspection and copying under the FOIA.
Appended to the "Notice of Employment Termination" is a copy of an interview undertaken by you, as sheriff, with Greg Rayl, concerning his job performance with regard to a particular incident or incidents, and some statements made by you with regard to these events. In my opinion these interview notes and comments are exempt from public inspection and copying because they are "job performance records," or at least "preliminary notes and other materials" which relate to job performance records. See A.C.A. § 25-19-105(c)(1) (Supp. 1997) and Watkins, RecentDevelopments under the Arkansas Freedom of Information Act, 1987 Arkansas Law Notes 59 (stating that "incident reports" were an intended inclusion within the "preliminary notes and other materials" relevant to "employee evaluation and job performance records"). Absent a final termination and the confluence of the other required factors under A.C.A. §25-19-105(c)(1), these records are exempt from disclosure.
The next document enclosed with your request is a letter from former Sheriff Benny Magness suspending Mr. Rayl for thirty days. If this suspension is administratively final, it is my opinion that this letter is open to public inspection if there is a "compelling public interest" in its disclosure. See, e.g., Op. Att'y Gen. 94-113. I am not privy to all the facts surrounding the suspension, as very little is reflected in the actual suspension letter. It has been stated, however, that "[t]he nature of the problem that led to the suspension . . . will undoubtedly bear on the `compelling public interest' question. . . . The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by employees. As the Attorney General has noted, the public "has a compelling public interest in seeing that its employees not only follow the law, but also the regulations by which they are to conduct their business." Watkins, TheArkansas Freedom of Information Act (mm Press 2nd ed. 1994) at 135,citing Op. Att'y Gen. 91-296.
Appended to the suspension letter are what appear to be some policies or code of conduct expected of members of the sheriff's department. These documents are open to inspection under the FOIA as they fall within no pertinent exemption from disclosure.
The next document enclosed with your request is a breakdown of Mr. Rayl's final paycheck, including amounts paid for accrued leave. An "Employee Attendance Record" is appended to this document. These documents are open to public inspection with one exception. Mr. Rayl's social security number appears on the latter document and should be excised prior to release thereof. See, e.g., Op. Att'y Gen. 95-242 (social security numbers of employees should be deleted and documents related to any compensation a former employee receives in addition to their regular paycheck is disclosable).
The next document enclosed for my review is a "Grievance Hearing Procedure" which embodies the schedule or format for the hearing set for February 25th which never occurred. This document is open to public inspection as it is subject to no exception.
The next document enclosed for my review is a cover letter to which is appended a document detailing Mr. Rayl's "work history." This document appears to have been prepared by you, as Mr. Rayl's supervisor, and is in my opinion exempt as an "employee evaluation or job performance record" as noted above.
The final documents enclosed for my review include a press release from the sheriff's office announcing Mr. Rayl's dismissal and the pertinent FOIA requests made by the various media outlets. These documents are of course open to public inspection.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] My authority under this statutory provision is to review the decision of the custodian of the records with regard to the release or withholding of the records. It does not appear that you or the county have made an initial decision as to the disclosability of the records, but rather, have forwarded the pertinent records to this office, and asked that I make the initial determination. Because of the applicable statutory time constraints, I will undertake the action requested, but will note that in future disputes, the county custodian should make the initial determination as to the lawfulness of the release of the records, which decision will then be subject to my review if requested.
[2] It should be noted that even if this document could be construed as a "personnel record" for purposes of the FOIA, its release would not in my opinion amount to a "clearly unwarranted invasion of personal privacy" so as to shield it from public inspection. See A.C.A. § 25-19-105(b)(10) (Supp. 1995).
[3] It is unnecessary to opine herein whether a resignation tendered in the face of a more certain, impending termination could be deemed to be a forced, coerced or constructive termination for purposes of A.C.A. §25-19-105(c)(1). That question will be addressed when properly presented for my review. Cf. generally, however, Dobbins v. Everett,2 Ark. App. 254, 620 S.W.2d 309 (1981) (employee, who, faced with certain termination, took less severe, embarrassing and traumatic option of resignation rather than discharge, did not quit voluntarily and without good cause for purposes of employment compensation decision).